**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ALPHONSO H. BROWN, III,** ) | **CASE NO.  4:05 CV 1811** |
| ) | 4:04 CR 102 |
| Petitioner, ) | |
| ) | **JUDGE DAN AARON POLSTER** |
| vs. ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |

Before the Court is the *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by Plaintiff Alphonso H. Brown, III ("Motion") **(ECF No. 1)**.  For the reasons to follow, the Motion is **DENIED**.

**I.**

In March 2003, an informant approached the Youngstown Police Department Vice Squad Unit and advised that someone was selling crack cocaine at 752 Delaware Avenue in Youngstown, Ohio.  *Case No. 4:04 CR 102, ECF No. 24* ("Plea Agreement") ¶ 6. Based on this information, officers conducted random surveillance of the residence during which they observed numerous subjects entering the residence and exiting after a short period of time.  *Id*. ¶ 7.  Officers subsequently conducted two controlled buys of crack cocaine at the residence.  *Id*. ¶ 8.  Based on

these activities, the Youngstown Police Department secured a warrant to search 752 Delaware Avenue – which turned out to be the residence of Petitioner Alphonso Brown's mother. *Id*. ¶ 9.

During the execution of the warrant on March 28, 2003, officers recovered heroin on a plate in the living room, marijuana on a night stand, and a safe in the kitchen containing crack cocaine, marijuana, a diamond ring, $300 cash and two revolvers (a Colt Model 32, serial #468658 and a Smith & Wesson .38 caliber, serial #N7153140512). *Plea Agreement* ¶ 12. Brown's mother, who was in the residence at the time, stated that she and her daughter were the only two people who lived there. *Id*. ¶ 11. Based on her statement and the amount of drugs recovered, she was arrested and charged in Youngstown Municipal Court. *Id*. Shortly thereafter, Brown, who was not at his mother's home during the search, voluntarily reported to the Mahoning Valley Drug Task Force and declared that the safe and its contents were his. *Id*. ¶ 12. The charges against his mother were later dismissed. *Id*. ¶ 11.

On March 3, 2004, a federal grand jury returned a one-count Indictment charging Petitioner Alphonso H. Brown, III with possession with intent to distribute approximately 63.186 grams of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(b). *Case No. 4:04 CR 102; ECF No. 1* ("Indictment"), at 1. At his arraignment, Brown entered a plea of "not guilty" to the Indictment. The Court declared Brown indigent and appointed counsel to represent him. *ECF No. 6*.

A trial order was entered on March 17, 2004 with a pretrial conference/change of plea deadline set for May 3, 2004, a final pretrial conference scheduled for May 10, 2004, and a trial scheduled for May 17, 2004. *ECF No. 10*. After the parties filed a joint motion to continue the dates

set forth in the trial order, *ECF Nos. 11, 12*, Brown filed an unopposed motion for preparation of a pre-plea presentence investigation report ("PSR") stating that the parties were in the process of attempting to resolve the criminal case by way of a plea agreement and some uncertainty existed as to Brown's criminal history at the time of the allegations contained in the Indictment, *ECF No. 13*. At a hearing held on May 3, 2004, the Court granted the parties' joint motion to continue the final pretrial conference and trial dates and defendant's unopposed motion for preparation of a pre-plea PSR. *ECF No. 14*. On August 18, 2004, the parties filed a signed Plea Agreement, *ECF No. 24*, and the Court held a change of plea and sentencing hearing, *ECF No. 28* ("COP and Sentencing Hr'g Tr.").

Under the signed Plea Agreement, Brown pled guilty to "possession with intent to distribute 39.5 grams of crack cocaine." *Plea Agreement* ¶ 5. Based on the quantity of crack cocaine involved and Brown's prior criminal record, the parties stipulated that Brown's base offense level was 30 and that he was in Criminal History Category III. *Id*. ¶ 18. The parties further agreed that Brown would receive a three-level downward departure for acceptance of responsibility and a timely guilty plea. *Id*. The Plea Agreement recited that the Government would seek a two-level enhancement for possession of a firearm in connection with a drug offense (the "weapons enhancement"), and that Brown would oppose this enhancement. *Id.* However, the parties agreed "to accept the Court's determination regarding [this issue]." *Id*. The parties also agreed that Brown's total offense level would be 29 if the Court determined that the two-level weapons enhancement applied, and 27 if the Court determined that the weapons enhancement did not apply. *Plea Agreement* ¶ 18. The parties acknowledged and agreed that the sentencing guideline range for offense level 29, Criminal History Category III, was 108 to 135 months, and the sentencing guideline range for offense level 27, Criminal History Category III,

3


was 87 to 108 months. *Id*. Paragraph 4 of the Plea Agreement reflects Brown's understanding that, based on his admission to possession with intent to distribute 39.5 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), he faced a statutory mandatory minimum prison term of five years and a statutory maximum prison term of 40 years.

The Plea Agreement also contained a section entitled "Blakely Waiver" in which Brown stated that he:

> understands that he may, but does not necessarily, possess a constitutional right to have certain factors under the U.S. Sentencing Guidelines included in aa grand jury indictment and decided by a jury under a proof beyond a reasonable doubt standard.  BROWN knowingly, intelligently, and voluntarily waives any right he may possess to have such factors alleged in an indictment and determined by ajury.  BROWN understands that, by virtue of this waiver, his sentence, and the existence of factors which may increase or affect his sentence, may be decided by the district court, without a jury.  BROWN understands that the district court may rely upon stipulations in this plea agreement as well as any other reliable evidence, including hearsay, in making those determinations and in imposing [a] sentence.  BROWN understands that he will be sentenced under the U.S. Sentencing Guidelines and waives any constitutional challenge to those Guidelines and/or to the imposition of sentence under the Guidelines.  BROWN acknowledges discussing this waiver and its consequences with counsel and understands the nature and consequences with counsel and understands the nature and consequences of this waiver.

*Id*. ¶ 23. This waiver was necessitated by the Supreme Court's decision in *Blakeley v. Washington*, 542 U.S. 296 (2004), which held, in the context of a state sentencing guideline system, that the Sixth Amendment prohibits judges from enhancing criminal sentences based on facts other than those decided by a jury. Subsequently, the Supreme Court issued *United States v. Booker*, 125 S. Ct. 738 (2005), extending the holding of *Blakely* to the Federal Sentencing Guidelines and ruling that the Guidelines are advisory, not mandatory.

In addition to the *Blakely* waiver, Brown recognized that, in limited circumstances, he may have the right to challenge his sentence on other grounds. *Plea Agreement* ¶ 24. However, he expressly waived that right reserving only "the right to appeal or seek post-conviction relief for any punishment imposed in excess of a statutory maximum, any sentence that constitutes an upward departure from the sentencing guideline range, and any claim not permitted to be waived under the Ohio Code of Professional Responsibility." *Id*. ¶ 25. Brown also reserved the right to bring, on appeal or in a postconviction proceeding, claims of government misconduct or ineffective assistance of counsel. *Id*. ¶ 26.

In exchange for Brown's guilty plea, the Government agreed to forego further prosecution of Brown for the admitted conduct. *Id.* ¶ 15. Brown agreed that the Plea Agreement represented the parties' discussions and that there were no agreements outside of the Plea Agreement. *Id.* ¶ 30.

Pursuant to Fed. R. Crim. P. 11(b) and the "core concerns" discussed by the Sixth Circuit Court of Appeals in *United States v. DeBusk*, 976 F.2d 300, 306 (6th Cir.1992), the Court carefully reviewed all of the aforementioned terms and provisions of the Plea Agreement with Brown during the change of plea and sentencing hearing. *See generally COP and Sentencing Hr'g Tr.* at 2-16. The Court confirmed that Brown had no understandings or agreements outside those set forth in the Plea Agreement, *id*. at 13-14, and that he was satisfied with counsel's representation, *id*. at 5. The Court concluded that Brown was competent to enter a guilty plea, that the guilty plea had a factual basis, that Brown understood the rights he had and the rights he was waiving, and that Brown came to the decision to enter a guilty plea knowingly and voluntarily. *Id*. at 15.

After accepting Brown's guilty plea, the Court proceeded to the sentencing portion of the hearing. *See generally COP and Sentencing Hr'g Tr.* at 16-28. The Court determined that the parties had previously received a copy of the pre-plea PSR and that there were no objections to it. *Id*. at 16. However, while Brown's counsel acknowledged that there were no objections, he nonetheless requested a downward departure to Criminal History Category I based on the fact that the first draft of the pre-plea PSR "did not indicate that the Sentencing Guidelines would be elevated based upon several what I would term minor convictions for traffic offenses." *COP and Sentencing Hr'g Tr.* at 16. Counsel admitted that under the revised PSR, his client had 6 criminal history points which placed him in Criminal History Category III, but that he considered those points to be an overstatement of Brown's criminal background based on convictions which he considered minor and lacking seriousness. *See id*. at 17-18. Although the Court indicated that it understood counsel's argument, it concluded that Criminal History Category III was "a fair and accurate snapshot of Mr. Brown's criminal history," noting that Brown had four criminal history points based on four one-point convictions, and that the four points were elevated to six because the convictions occurred while Brown was on probation or parole. *See id*. at 23.

The Court next determined that Brown's base offense level was 30 based on the parties' agreement regarding the quantity of drugs involved. *COP and Sentencing Hr'g Tr.* at 18-20. After hearing argument on whether the two-level enhancement for possession of a firearm in connection with a drug-related offense applied to Brown's sentence, the Court found that it did based on the proximity of the drugs, the plastic baggies, the currency and the firearms contained in the locked safe which Brown admittedly owned and over which he exerted control. *See id*. at 19-23. The Court gave

Brown a two-level reduction for acceptance of responsibility and a one-level reduction for a timely guilty plea, placing Brown at a total offense level of 29 which, with Brown's Criminal History Category III, carried a Guidelines sentencing range of 108 to 135 months. *See id*. at 23-24. The Court then granted Brown's request that he be sentenced to the low end of the applicable Guidelines sentencing range, or 108 months.[1] *Id.* at 25-27. In light of *Blakely*, the Court pronounced an alternative sentence, determining that it would impose the very same prison sentence (108 months) under an advisory sentencing regime as well. *Id.* at 27. This was the procedure strongly encouraged by the Sixth Circuit at that time. *See United States v. Koch*, No. 02-6278, 2004 WL 1870438, at *1 (6th Cir. Aug. 13, 2004).

Brown did not appeal his conviction or sentence. However, on July 18, 2005, he filed the instant Motion seeking post-conviction relief. Brown contends that his sentence violates the Sixth Amendment because he received a two-point enhancement for possession of a firearm in connection with a drug offense, which conduct "he did not admit to." *Motion* at 5. Brown further contends that counsel was ineffective for failing to file a direct appeal challenging the two-point enhancement, despite Brown's request that he do so and despite "the stipulation in the plea agreement which allowed the Defendant to challenge the two-point enhancement for weapons possession." *Motion, Att. 1,* at 3. Brown also contends that he was denied the effective assistance of counsel because counsel promised him that he would receive safety-valve consideration, "boot camp" and a maximum prison term of 46-57 months. *Motion*, at 5.

---

[1] The Court also imposed 4 years of supervised release and a mandatory special assessment of $100.

7

**II.**

Under 28 U.S.C. § 2255, a federal district court may grant relief to a prisoner in custody under a sentence imposed by that court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  *Id*.  To prevail on a § 2255 claim, the petitioner must show a fundamental defect in the proceedings "which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  *Nagi v. United States*, 90 F.3d 130, 133-34 (6th Cir. 1996) (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires the judge to whom it is assigned to promptly make a preliminary examination of the petition, records, and transcripts relating to the judgment under attack.

> If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.  Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate.

*Id*.  The Court has examined the § 2255 petition and reviewed the file of the underlying criminal case, and concludes that summary dismissal is appropriate under Rule 4(b) for the following reasons.

### III.

### A.

Brown contends that his sentence violates the Sixth Amendment because the Court applied a two-level enhancement to Brown's sentence for possession of a firearm in connection with a drug offense, which conduct he "did not admit to." *Motion* at 5. Brown further contends that counsel was ineffective for failing to file a direct appeal challenging the weapons enhancement, despite Brown's request that he do so and despite "the stipulation in the plea agreement which allowed the Defendant to challenge the two-point enhancement for weapons possession." *Id., Att. 1,* at 3. These contentions are meritless.

Brown's assertion that he "reserved the right to contest these two points on appeal" is contradicted by the record. *Motion, Att. 1,* at 2. Under the Plea Agreement, Brown reserved the right to oppose the application of the weapons enhancement at the sentencing hearing but expressly agreed to "accept the Court's determination regarding it." *Plea Agreement* ¶ 18. Brown not only waived any constitutional right he may have had under *Blakely* to have a jury determine beyond a reasonable doubt whether the weapons enhancement applied to his sentence, but he waived the right to challenge the Court's determination on appeal or in a postconviction proceeding. *Id*. ¶ 23. The Court complied with Rule 11(b)(1)(N) in covering Brown's right to appeal and collaterally attack his sentence generally (and specifically with regard to *Blakely*), and confirmed that Brown's waiver of those rights was knowing and voluntary. *COP and Sentencing Hr'g Tr.* at 9-10, 12-13, 15. The Sixth Circuit has upheld similar waivers in plea agreements. *See, e.g., United States v. Bradley*, 400 F.3d 459, (6th Cir.

9

2005); *United States v. Calderon*, 388 F.3d 197 (6th Cir. 2004); *United States v. Hicks,* 134 Fed. Appx. 902, 904 (6th Cir. 2005).

Notwithstanding, Brown claims that counsel was ineffective for failing to appeal his sentence based on *Blakely*, despite Brown's request that he do so. Claims of ineffective assistance of counsel are analyzed under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 694). A review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). As to the second "prejudice" prong, the Supreme Court has stated that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694).

Because Brown unambiguously waived any right he may have had to bring a *Blakely* challenge on direct appeal, and because the Sixth Circuit has enforced such waivers, Brown cannot show that counsel's performance was deficient when he refused to file an appeal based on that particular ground, or that he was prejudiced thereby.

Indeed, the only appellate right Brown reserved with respect to his sentence was the right to challenge a sentence imposed in excess of the statutory maximum or an upward departure.

Neither of those exceptions apply. The record shows that the Court granted Brown's request that he be sentenced to the low end of the applicable Guidelines sentencing range, or 108 months. Brown's 108-month sentence should survive Sixth Circuit scrutiny even after the Guidelines were determined to be advisory in *Booker*, because the Court imposed an alternative sentence of 108 months for the reasons set forth at the change of plea and sentencing hearing. *COP and Sentencing Hr'g Tr.* at 27. Because Brown has no basis upon which to challenge his sentence on appeal, he cannot show that he was prejudiced by counsel's failure to file such appeal.

Finally, the undersigned is precluded from reviewing Brown's *Blakely* challenge in this proceeding because the Sixth Circuit has determined that neither *Blakely* nor *Booker* apply retroactively to cases on collateral review. *See Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.2005).

For all these reasons, Brown's ineffective assistance claim premised upon counsel's failure to file an appeal based on *Blakely*, and the underlying *Blakely* claim, are hereby dismissed on the merits.

**B.**

Next, Brown argues that counsel was ineffective for failing to keep his purported promise to Brown that he was eligible for safety-valve consideration and that the maximum prison sentence he would face if he pled guilty was 57 months. *Motion* at 5. This claim is also meritless.

Under 18 U.S.C. § 3553(f), a district court may impose a sentence below the statutory mandatory minimum set forth in 21 U.S.C. §841, after the Government has been afforded the opportunity to make such a recommendation, if the defendant shows that he meets all five specific eligibility requirements. *United States v. Dominguez Benitez*, 124 S.Ct. 2333, 2337 (2004) (citing

11

18 U.S.C. § 3553(f)). In order to qualify for such "safety valve" consideration, the defendant must show, among other things, that he "does not have more than 1 criminal history point, as determined under the sentencing Guidelines," and that he "did not . . . possess a firearm . . . in connection with the [underlying] offense." 18 U.S.C. §§ 3553(f)(1), (2), respectively.

In the instant case, the Plea Agreement does not mention anything about Brown's eligibility for safety-valve consideration, and the Government never made such recommendation. The Plea Agreement plainly states that Brown was subject to a statutory mandatory minimum prison term of five years, he was in Criminal History Category III, and he would abide by the Court's ruling regarding whether he possessed a firearm in connection with a drug offense. *Plea Agreement* ¶¶ 4, 18. During the Rule 11 change-of-plea colloquy, the Court repeatedly confirmed that Brown understood these provisions, and that his probable Guidelines sentencing range would be 87 to 135 months. *See COP and Sentencing Hr'g Tr*. at 6, 8-9, 14, 27. When the Court asked Brown whether he thought he had any other agreement or understanding in his deal with the Government other than what was set forth in the Plea Agreement, he responded, "No. No, sir." *Id*. at 13-14.

In short, there is absolutely no evidence other than Brown's recent unsupported allegation that counsel promised him safety-valve consideration or a maximum sentence of 57 months. This alone is a sufficient basis upon which to dismiss this ineffectiveness claim. *See Ross v. United States*, 339 F.3d 483, 494 (6th Cir. 2003) ("An allegation entirely unsupported by the record cannot meet the prejudice component of the *Strickland* inquiry."). My conclusion is only bolstered by the fact

that Brown is ineligible for safety-valve consideration based on his six criminal history points and his possession of a firearm in connection with a drug offense.[2]

### C.

Lastly, Brown argues that counsel was ineffective for failing to follow through on his promise that Brown would serve his sentence in "boot camp."  *Motion* at 5.  Under 18 U.S.C. § 1404(a), "[t]he Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement."  *Id*.  Moreover,

> For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to--
>   (1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and
>   (2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.

18 U.S.C. § 4046(b).  Finally,

> An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

18 U.S.C. § 4046(c).  This "shock incarceration program" is better known as "boot camp."  *United States v. Marine*, 94 Fed. App. 307, 308 (6th Cir.2004).

---

[2] In any event, the record does show that during the sentencing phase of the hearing, Brown's counsel sought a downward departure based on what he perceived to be an overstatement of Brown's criminal background.  Although the Court did not agree, the record shows that counsel availed himself of the opportunity to state his client's position.

Again, the Plea Agreement does not mention boot camp and there is no evidence in the record to support Brown's assertion that counsel promised him boot camp if he entered a guilty plea. In any event, Brown's 108-month prison sentence would render him ineligible for the program and it is the Bureau of Prisons – not the district court – that decides which eligible prisoners may participate in the program. 18 U.S.C. §§ 4046(a), (b). Accordingly, Brown cannot show that he was prejudiced by counsel's failure to follow through on an unlikely, let alone unsupported, promise. *Ross*, 339 F.3d at 494.

### IV.

Because a review of the record shows that Brown's claims are meritless, his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (**ECF No. 1**) is hereby **DENIED** and summarily dismissed.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     10/6/2005*
**Dan Aaron Polster**
**United States District Judge**